UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRUCE D PFEIFER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-03478-WTL-TAB |
| | ) | |
| MICHAEL PERSON, | ) | |
| CHRIS HUFFORD, | ) | |
| CORIZON MEDICAL, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Summary Judgment and Directing Final Judgment**

Plaintiff Melvin Pfeifer, who at all relevant times was incarcerated at Correctional Industrial Facility ("CIF"), brought this action pursuant to 42 U.S.C. § 1983 against defendants Dr. Michael Person, Health Staff Administrator Chris Hufford, and Corizon Medical ("Corizon"), alleging that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Mr. Pfeifer further alleges that Dr. Person is liable for medical malpractice under Indiana Law.

The defendants now move for summary judgment on the merits of Mr. Pfeifer's claims. Mr. Pfeifer has not responded to the defendants' motion, and the time to do so has passed, leaving the defendants' motion unopposed. For the reasons explained, the defendants' unopposed motion for summary judgment, Dkt. No. 26, is **granted**.

**I.     Factual Background**

As noted above, Mr. Pfeifer failed to respond to the defendants' motion for summary judgment, and the deadline for doing so has passed. The consequence is that Mr. Pfeifer has conceded the defendants' version of the events. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.

2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

Accordingly, the following facts, unopposed by Mr. Pfeifer and supported by admissible evidence, are accepted as true. Although the defendants present substantial evidence, the Court sets forth only the facts necessary to resolve Mr. Pfeifer's claims given the unopposed nature of the defendants' motion.

In December of 2012, Mr. Pfeifer complained of having irregular heartbeats and shortness of breath. An EKG was performed and the results were normal with rare premature ventricular contractions ("PVCs"). Dkt. No. 28-1. PVCs are common and their cause can be difficult to identify. *Id*. Patients who experience PVCs often require no treatment. *Id*. PVCs can lead to dangerous heart rhythms rarely when accompanied by heart disease, but Mr. Pfeifer suffered from no underlying heart disease. *Id*.

In 2013, Mr. Pfeifer had another EKG which was again normal with occasional PVCs. *Id*. In 2014, complaining of chest pain, he was prescribed a beta blocker. *Id*. In 2015, an EKG again showed PVCs. The treating physician discussed lifestyle changes with Mr. Pfeifer and offered a referral to Behavioral Health, but Mr. Pfeifer declined. *Id*.

Defendant Dr. Person treated Mr. Pfeifer for the first time on August 21, 2015. Mr. Pfeifer reported no chest pain or palpitations and reported that he was not taking any medications. His cardiac exam was normal. Dr. Person recommended lifestyle changes to treat his borderline hypertension. In November 2015, Mr. Pfeifer refused lab work ordered by Dr. Person. In January 2016, he again refused lab work and medication for hypertension. In March 2016, he again refused lab work ordered by Dr. Person. *Id.*

Mr. Pfeifer alleges that he went into "cardiac arrest" on April 7, 2016, but he was not seen by any medical provider on that date. He saw a nurse the following day and complained of chest pain, but refused lab work and medication. A week later, an EKG showed a normal heart rhythm with occasional PVCs. He was again prescribed a beta blocker. Two days later, Mr. Pfeifer complained that the medication was not helping. A nurse found that his heart rate was irregular. *Id.*

Dr. Person consulted with a cardiologist and ultimately ordered a holter monitor to record Mr. Pfeifer's heartbeat for seven days. The monitor revealed that Mr. Pfeifer had normal heart rhythms with occasional PVCs. No other concerns were identified. On July 7, 2016, Mr. Pfeifer had a telehealth appointment with Dr. Ross, the cardiologist with whom Dr. Person had consulted. Dr. Ross recommended a treadmill stress test which Dr. Person ordered. Before the stress test, Dr. Person saw Mr. Pfeifer and noted that he had missed 13 of his last 15 doses of medication. He addressed this issue with Mr. Pfeifer but Mr. Pfeifer refused to follow Dr. Person's advice. *Id.*

Mr. Pfeifer completed a stress test at St. Vincent Regional Stress Lab on July 29, 2016. The results showed PVCs and were otherwise normal. Over the next few months, Mr. Pfeifer had telehealth appointments with Dr. Ross and his medication and dosage were adjusted. *Id.*

Dr. Person continued to treat Mr. Pfeifer for high blood pressure. In the fall of 2016, Mr. Pfeifer complained of bumps on his head and hair loss which he attributed to his heart medication. Dr. Person prescribed antibiotics for the bumps and injections for the hair loss. A few months later, Dr. Person prescribed him medicated shampoo and ordered lab work. In early 2017, Dr. Person performed a cardiac exam on Mr. Pfeifer, finding only hypertension. Dr. Person last treated Mr. Pfeifer on April 25, 2017, at which time Mr. Pfeifer's PVCs had resolved. *Id*.

Throughout his treatment, Mr. Pfeifer filed several grievances regarding his medical care. Those grievances were reviewed by defendant Chris Hufford. Dkt. No. 28-3. As a Health Services Administrator, Mr. Hufford did not provide medical care to Mr. Pfeifer. Instead, he reviewed Mr. Pfeifer's medical grievances, reviewed Mr. Pfeifer's medical records to ensure that he was receiving medical treatment, and responded to Mr. Pfeifer's grievances. Mr. Hufford did not have the authority to override the medical decisions of Dr. Person or any other medical professional that treated Mr. Pfeifer. *Id*.

## II.
## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## III.
## Discussion

Mr. Pfeifer asserts Eighth Amendment medical care claims against the defendants. At all times relevant to Mr. Pfeifer's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). For purposes of summary judgment, the parties do not dispute that Mr. Pfeifer's chest pain constitutes a serious medical condition. Instead, they disagree as to whether the defendants were deliberately indifferent to that pain.

### A. Dr. Person

"To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

The undisputed evidence shows that Dr. Person responded appropriately to Mr. Pfeifer's complaints. He ordered tests, prescribed medication, recommended lifestyle changes, and referred Mr. Pfeifer to a cardiologist. There is no evidence that Dr. Person failed to exercise medical judgment or respond appropriately to Mr. Pfeifer's complaints. Dr. Person was not deliberately indifferent to Mr. Pfeifer's chest pain. He is therefore entitled to summary judgment on Mr. Pfeifer's deliberate indifference claim.

Dr. Person is also entitled to summary judgment on Mr. Pfeifer's medical malpractice claim. The Indiana Medical Malpractice Act contains two requirements that must be satisfied before commencing a medical malpractice claim in court: "(1) the claimant's proposed complaint has been presented to a medical review panel ... and (2) an opinion is given by the panel." Ind.Code

§ 34–18–8–4(1)–(2). The statutory exception for cases in which the plaintiff demands less than $15,000 does not apply here because Mr. Pfeifer demands $500,000 in damages. *See* Ind. Code § 34-18-8-6.

There is no evidence that Mr. Pfeifer presented his claim to the medical review panel. Because he failed to comply with the Indiana Medical Malpractice Act, his medical malpractice claim must be dismissed. *See Tacket v. GMC, Delco Remy Div.*, 93 F.3d 332, 334 (7th Cir. 1996) (*citing Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 408 (7th Cir. 1984)).

### B. Christopher Hufford

Mr. Pfeifer alleged that Mr. Hufford was deliberately indifferent to his medical needs. The undisputed evidence shows that Mr. Hufford was not deliberately indifferent to Mr. Pfeifer's chest pain. On the contrary, Mr. Hufford reviewed Mr. Pfeifer's medical records in response to Mr. Pfeifer's medical grievances and confirmed that medical professionals were treating his medical conditions. He is therefore entitled to summary judgment.

### C. Corizon

Because Corizon acts under color of state law by contracting to perform a government function, *i.e.* providing medical care to correctional facilities, Corizon is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 fn.6 (7th Cir. 2002). Therefore, to prove a deliberate indifference claim against Corizon, Mr. Pfeifer must establish that he suffered a constitutional deprivation as the result of an express policy or custom of Corizon. Mr. Pfeifer must show that Corizon has: (1) an express policy that, when enforced, caused a constitutional deprivation; (2) a practice that is so wide-spread that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused

by a person with final policy making authority. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-759 (7th Cir. 2004). In addition, the failure to make policy itself may be actionable conduct. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017).

The defendants assert that Corizon does not have any custom or policy that dictates healthcare decisions. Dkt. No. 28-3. Mr. Pfeifer did not respond to dispute this. There is no evidence in the record that Corizon has any policy or practice of denying requests for medical treatment or of condoning deliberate indifference to serious medical needs. Therefore, Corizon is entitled to summary judgment on Mr. Pfeifer's policy and practice claim.

## IV.
## Conclusion

For the reasons explained above, the defendants' unopposed motion for summary judgment, Dkt. No. 26, is **granted**. Mr. Pfeifer's claims are **dismissed with prejudice**. Final judgment shall issue accordingly.

**IT IS SO ORDERED.**

Date: 3/8/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

BRUCE D PFEIFER, JR.
146759
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Jeb Adam Crandall
BLEEKE  DILLON  CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com